IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

| | | |
|---|---|---|
| MARK DICKERSON, | ) | |
| | ) | |
| Plaintiff, | ) | No.: 4:04-CV-1458 GTE |
| | ) | |
| vs. | ) | |
| | ) | |
| UNION PACIFIC RAILROAD CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF
PLAINTIFF'S MOTIONS IN LIMINE**

**1.   Motion in Limine Regarding Collateral Source Benefits Including RRB Benefits**

Plaintiff moves this Court, in limine, to instruct defendants and their Counsel to abstain from and preclude them from using any pleading, testimony, remarks, questions, arguments, opening, statements or evidence which might inform the jury that Plaintiff has applied for, will be eligible to apply for, or has received collateral source benefits, including, but not limited to, disability, sickness and retirement benefits through the Railroad Retirement Board or other source because this information/evidence constitutes inadmissible collateral source benefits which are irrelevant, unduly prejudicial, confusing and misleading. Although Plaintiff has received such benefits, these amounts are subject to a lien which requires payment from Plaintiff, upon any recovery in this case. Thus, exclusion of evidence of benefit receipt would not result in a windfall to Plaintiff or unjust liability to either defendant. Accordingly, this evidence should be excluded as irrelevant, consistent with the collateral source rule.

The U.S. Supreme Court repeatedly has held that evidence of collateral source payments such as RRB disability benefits should be excluded as irrelevant, unduly prejudicial and inadmissible.

In <u>Eichel v. N.Y. Central R.R.</u>, 375 U.S. 253 (1963), the plaintiff alleged that he sustained permanent, disabling injuries as a result of his employer's negligence. The employer attempted to introduce evidence that the plaintiff was receiving disability benefits under the Railroad Retirement Act. <u>Eichel</u>, 375 U.S. at 253. The employer argued that the evidence was probative of the plaintiff's motive for not returning to work. <u>Id</u>. at 254. The Supreme Court affirmed the trial court's exclusion of the evidence, reasoning that such benefits could not be used to offset or mitigate the employee's damages nor to attempt to prove a plaintiff's alleged lack of motivation to mitigate damages or not returning to work. <u>Id</u>. The Court explained its holding as follows:

> In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of disability pension. Moreover, it would violate the spirit of the federal statutes if the receipt of disability benefits under the Railroad Retirement Act . . . were considered as evidence of malingering by an employee asserting a claim under the Federal Employers' Liability Act. We have recently had occasion to be reminded that evidence of collateral benefits is readily subject to misuse by a jury. It has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that the petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact.

<u>Eichel</u>, 375 U.S. at 255 (citing <u>Tipton v. Socony Mobil Oil Co., Inc.</u>, 375 U.S. 34 (1963)).

The Eighth Circuit Court of Appeals recognized that collateral source payments are "inadmissible per se." <u>Vanstrike v. ACF Industries, Inc.</u>, 665 F.2d 188, 200 (8th Cir. 1981). Since <u>Eichel</u>, the other federal circuit courts have also recognized a more strict exclusionary rule in FELA cases than is present in non-FELA cases and followed <u>Eichel</u> to exclude evidence of collateral source payments including disability and retirement benefits paid on account of a work related injury. <u>See, e.g.</u>, <u>Reed v. Philadelphia, Bethlehem & New England Railroad Co.</u>, 939 F.2d 128, 134 (3d Cir. 1991) (trial court improperly allowed the defense to argue that the plaintiff was receiving disability

payments); Page v. St. Louis Southwestern Ry. Co., 349 F.2d 820 (5th Cir. 1965)(retirement benefits under RRA are inadmissible to show malingering or that Plaintiff would have retired even absent the injury); Sheehy v. Southern Pacific Transportation Co., 631 F.2d 649, 652 (9th Cir. 1980) ("the discretion normally applicable to admit all relevant evidence of collateral benefits is greatly limited in FELA cases"); Green v. Denver & R.G.W.R.R., 59 F.3d 1029, 1033-34 (10th Cir. 1995), cert.den., 516 U.S. 1009 (admission of disability benefits was reversible error, even though the jury found no liability, because of the concern that "juries will be more likely to find no liability if they know the plaintiff has received some compensation.").

The scope of exclusion of collateral source evidence is unquestionably broad. It is error to allow defense counsel to tell the jury that plaintiff had retired and was currently receiving a disability pension. Finley v. Amtrak, 1 F.Supp.2d 440, 443-444 (E.D. Pa. 1998). The simple suggestion by a defendant that railroad employees are entitled to full retirement benefits when they attain the age of sixty and have thirty years of service is inadmissible and constitutes reversible error, if admitted. Greisser v. National Railroad Passenger Corp., 761 A.2d 606 (Penn.Sup.Ct. 2000) (citing Green, supra). In Greisser, the court articulated the rationale for such broad exclusion as follows:

> We understand that future retirement benefits are not triggered by the injury; rather, they would have been awarded even if [the employee] had not been injured. Moreover, future retirement benefits do to improperly suggest that the plaintiff is currently being compensated for his injury from another source. In these respects, the evidence at issue is not "classic" collateral source evidence.
>
> On the other hand, there remains a significant danger that a jury will misuse and misinterpret evidence of early retirement benefits. For example, the jury could conclude that [the railroad] was liable for lost wages to age 65 or 70, but then decline to award such damages because of the fortuitous existence of equivalent retirement benefits. Or, the jury could conclude that [the employee] was entitled to benefits only to age 60 and was attempting to seek a double recovery of benefits after age 60. In short, this evidence distracts the jury from the issues in the case and has a strong likelihood of prejudicing the plaintiff. Thus, we conclude that evidence of [plaintiff's] future retirement benefits was inadmissible to show that [he] had an

economic incentive to retire before age 65, because of the danger that the jury would use this evidence for the improper purpose of mitigating [his] damages or reducing [the railroad's] liability. In this way, we adhere to the underlying purpose of the collateral source rule in light of the strong policy against the admission of collateral benefits in FELA cases.

In light of the abundantly clear precedent, Defendants should be barred from introducing any evidence of any collateral source benefits or from otherwise injecting same into the case, including suggesting that Plaintiff has received sickness or disability benefits from the railroad retirement board or other collateral source or that he presumably would have been eligible to receive retirement benefits had he be able to continue working for a railroad for a number of years and for such other relief as the Court deems proper.

**2.      Motion In Limine Regarding Railroad Retirement Taxes**

Plaintiff moves this Court in limine, to instruct defendants and their Counsel to abstain from and preclude them from using any pleading, testimony, remarks, questions, arguments, opening, statements or evidence in an attempt to reduce Plaintiff's economic damages by the amount withheld for railroad retirement taxes, otherwise known as Tier I and Tier II. The proper measure of a railroad worker's wage loss is gross wages, net of federal and state income taxes. Railroad Retirement taxes should not be deducted from Plaintiff's lost earnings because the overwhelming majority of jurisdictions exclude such evidence and allow Plaintiff to submit a claim for a future earnings loss discounted by federal and state INCOME taxes only.

Retirement annuities for railroad workers are governed by the Railroad Retirement Act of 1974, 45 U.S.C. §231 et seq. (RRA). The money for the payment of these annuities is kept in the railroad retirement account maintained in the United States Treasury. 45 U.S.C. 231n. This account is funded primarily by the Railroad Retirement Tax Act, 26 U.S.C. §§3201 et seq. Railroad employers and employees are required to pay to the Internal Revenue Service Tier I and

Tier II taxes, which are calculated as a percentage of employee compensation.  See 26 U.S.C. §§3201, 3221.  The railroad is responsible for making a contribution regardless of whether an employee is injured on the job and the benefits forwarded under the RRA are of a separate and distinct nature from any recovery under the FELA.  Melton v. Illinois Central Gulf R.Co., 763 S.W.2d 321, 326 (Mo.App. 1988).

The United States Supreme Court has recognized railroads are entitled to have a plaintiff's earnings loss reduced by federal and state income taxes.  Norfolk & Western R. Co. v. Liepelt, 444 U.S.490, 493-94 (1980).  "The Supreme Court, however, has never held that Tier I and Tier II payments toward retirement are to be treated the same as federal and state income taxes and, therefore, deducted to establish net income."  Norfolk & Western Ry. v. Chittum, 468 S.E.2d 877, 882 (Va. 1996).

The lower courts have uniformly held that railroad retirement taxes are inadmissible to offset a plaintiff's damages.  Id. (citing Hetrick v. Reading, 39 F.Supp. 22 (D.N.J.1941) (railroad may not set off payments made under RRA against damages awarded under FELA)); Folkstad v. Burlington Northern, Inc., 813 F.2d 1377, 1379-80 (9th Cir. 1987) (payments to RRA are inadmissible collateral source benefits and admission of payments is improper under 42 U.S.§55 barring devices attempted by railroads to exempt themselves from full liability for employee injuries); Newhard v. Philadelphia Bethlehem & New England R.Co., No.97-1527 (3rd Cir. 1999) (fundamental difference between income taxes and the RRB tax which effects the amount of pension benefits an employee receives upon retirement warrants exclusion from evidence).  See also Rachel v. Consolidated Rail Corp., 819 F. Supp. 428 (D.Ohio. 1995) (evidence of railroad retirement taxes are not admissible as proof of plaintiff's loss of future annuity value).  When figuring after- tax lost income in an FELA case, the court in Maylie v. National Railroad

Passenger Corp., 791 F.Supp. 477, 487(E.D.Pa. 1992), explicitly found that Social Security taxes were not analogous to retirement taxes and that railroad retirement taxes should not be deducted from plaintiff's projected gross income.

The jury instruction submitted by the parties clearly defines the proper scope of the law: "Plaintiff will not be required to pay any federal or state income taxes on any amount that you award. When calculating lost earnings, if any, you should use after-tax earnings." See 8th Cir. Civil Jury Instr. (2005) 7.06D. Accordingly, the Court should exclude any evidence of railroad retirement taxes. The only type of taxes to be deducted under federal law are state and federal income taxes, as has been done by Plaintiff's economist, Dr. Ralph Scott, whom Defendant deposed without challenge to this method of calculation.

Respectfully submitted,

| OGLESBY LAW FIRM, P.A. | SCHLICHTER, BOGARD & DENTON |
|---|---|
| EDWARD T. OGLESBY, AR Bar #89158<br>100 MORGAN KEEGAN, SUITE 110<br>LITTLE ROCK, AR 72202<br>**edward@oglesbylaw.com**<br>(501) 664-1000<br>(501) 664-1012 FAX | /s/ Nelson G. Wolff<br>NELSON G. WOLFF<br>AR Bar 2006002, Fed Bar#37998<br>100 SOUTH FOURTH ST., SUITE 900<br>ST. LOUIS, MISSOURI 63102<br>**nwolff@uselaws.com**<br>(314) 621-6115<br>(314) 621-7151 FAX |

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and accurate copy of the foregoing document have been delivered to the parties through their respective counsel via electronic filing notice on this 14th day of April, 2006 as follows:

Scott Lancaster
2000 Regions Center
400 West Capitol Avenue
Little Rock, Arkansas 72201-3493
slancaster@fec.net

J. Cotten Cunningham
101 South Spring St., Suite 300
Little Rock, Arkansas 72201-2488
ccunningham@laserlaw.com

                                                /s/ Nelson G. Wolff